1   RON SUNG, ESQ.
    Nevada State Bar No. 13047C
2   I. KRISTINE BERGSTROM, ESQ.
    Nevada State Bar No. 10841
3   Nevada Legal Services, Inc.
    530 South Sixth Street
4   Las Vegas, Nevada 89101
    (702) 386-0404 x148
5   Facsimile (702) 388-1641
    *Attorneys for Plaintiff Lakeysha Holmes*

6

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

7

8   **UNITED STATES OF AMERICA**            Case No. **2:13-cv-02149-APG-GWF**
    ***ex rel.* LAKEYSHA HOLMES, Relatrix,**
9   **and LAKEYSHA HOLMES,**                **PLAINTIFF'S RESPONSE TO**
                                            **DEFENDANT'S MOTION FOR**
10          **Plaintiffs,**                 **PARTIAL SUMMARY JUDGMENT**
                                            **[ORAL ARGUMENT REQUESTED]**
11          **v.**

12  **WIN WIN REAL ESTATE, INC., a Nevada**
    **Corporation;**
13  **MOONLIT PROPERTIES, LLC, a Nevada**
    **Limited Liability Corporation; and**
14  **FAISAL and SARAH CHAUDHRY,**

15          **Defendants.**

16  **MOONLIT PROPERTIES, LLC,**

17          **Counter-Claimant,**

18          **v.**

19  **LAKEYSHA HOLMES,**

20          **Counter-Defendant.**

21          Plaintiff LAKEYSHA HOLMES (hereinafter "Holmes"), by and through her attorney,

22  Ron Sung, Esq., of Nevada Legal Services, Inc., files this Reply to Defendant's Motion for

23  Partial Summary Judgment. This Reply is made and based on the pleadings and papers on file

24                                          1

1  herein, the attached Memorandum of Points and Authorities, and any oral argument this Court

2  may allow.

3      In support of this Response, Plaintiffs files a Memorandum of Points and Authorities.

4  Plaintiffs request oral argument on this Motion.

5      DATED this _10_ day of _March_, 2015.

6                                    Respectfully Submitted,

7

8                                    RON SUNG, ESQ.
                                     Nevada State Bar No. 13047C
9                                    I. KRISTINE BERGSTROM, ESQ.
                                     Nevada State Bar No. 10841
10                                   Nevada Legal Services, Inc.
                                     530 South Sixth Street
11                                   Las Vegas, Nevada 89101
                                     (702) 386-0404 x148
12                                   Facsimile (702) 388-1641
                                     *Attorneys for Plaintiff Lakeysha Holmes*

13

14

15

16

17

18

19

20

21

22

23

24

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    Defendants lack any evidentiary basis for their arguments.**

Defendants' argument in favor of Motion for Partial Summary Judgment rests entirely on the false assertion that the lease between Holmes and Defendants was part of the Housing Assistance Payments (HAP) Contract, and thus, the Southern Nevada Regional Housing Authority (SNRHA) approved the lease provisions for HOA and property management fees when SNRHA signed the HAP Contract. Defendants' Motion for Partial Summary Judgment 2:12-13 and 4:8-9. Tellingly, Defendants fail to cite to any provision in the lease or the HAP Contract to substantiate their claim that the lease was part of the HAP Contract. Moreover, Defendants fail to cite to any evidence that SNRHA approved the lease that charged Holmes for HOA and property management fees in addition to rent.

**B.    When the HAP Contract and the lease conflict, the HAP Contract controls.**

Defendants misinterpret the relationship between the HAP Contract and the lease. The HAP Contract is between Defendants and SNRHA; the lease is between Defendants and Holmes. Under the HAP Contract, Defendants certified that the lease between Defendants and Holmes were in accordance with all the provisions of the HAP Contract. HAP Contract, Part C ¶ 2(a) and Part B ¶ 7(b). In addition, Defendants agreed to add Part C of the HAP Contract, called Tenancy Addendum, to the lease. HAP Contract, Part C ¶ 2(a), Part B ¶ 2(c), 2(d)(1) and 7(b). Under Part C ¶ 2 and 14 of the Tenancy Addendum to the lease, Defendants agreed that if there is any conflict between the HAP Contract and any other provisions of the lease, the HAP contract controls. HAP Contract. Part A ¶ 8 of the HAP Contract listed the respective responsibilities for utilities and appliances for both the owner and tenant; if the utility or

appliance was not listed in this section, "the owner shall pay for all utilities and appliances provided by the owner." The lease charged Holmes for HOA and property management fees under Utilities. Defendants' Motion for Partial Summary Judgment, Exhibit A, Page 3. This conflicts with the HAP Contract that did not include property management and HOA fees. HAP Contract, Part A ¶ 8. Because the HAP Contract did not include property management and HOA fees, Defendants were responsible for those fees, and any provision in the lease or elsewhere for property management and HOA fees would be void.

**C.      Defendants could not charge more than the rental amount listed in the HAP Contract.**

In charging HOA and property management fees, Defendants breached the HAP Contract by collecting more than the set rental amount. Under the HAP Contract, Defendants could only receive $1,328 in rent, in which SNRHA paid $1,103 and Holmes paid the remainder. HAP Contract, Part A ¶ 6-7. Defendants certified not to charge additional rent, otherwise known as side payments, and to immediately return any excess rent payment to Holmes. HAP Contract, Part B ¶ 8 and Part C ¶ 5. Besides agreeing to the HAP Contract with SNRHA, Defendants also signed the Reduction of Rent Acknowledgement on January 11, 2012, agreeing with SNRHA that "no additional rent is to be collected from [Holmes] (Side Payment)" and that "if it is discovered that additional rent is being collected from the tenant, the Housing Assistance Contract (HAP) will be terminated." Plaintiff's Motion for Summary Judgment, Exhibit C. Federal regulations include similar language: 24 C.F.R. 983.209(g) and (h) (2005) requires landlords to certify not to receive any side payments, while 24 C.F.R. 983.353(b)(3) (2005) and 24 C.F.R. 982.451(b)(3) and (4) (1999) prohibit landlords from

1   charging rent in excess to the HAP Contract and require landlords to immediately return any

2   excess rent. Thus, the HAP Contract, the Reduction of Rent Acknowledgement and federal

3   regulations all prohibit Defendants from collecting more than the rental amount of $1,328 in the

4   HAP Contract.

5

6   **D.      Property Management and HOA fees are not allowable side payments.**

7           Landlords under the HAP Contract can only charge side payments beyond rent in

8   limited circumstances. The HAP Contract defines rent as "payment for all housing services,

9   maintenance, equipment, and utilities to be provided by the owner without additional charge to

10  the tenant, in accordance with the HAP contract and lease." HAP Contract, Part C ¶ 5. Federal

11  regulations prohibits landlords from charging extra amounts for items customarily included in

12  rent in the locality or provided at no additional cost to unsubsidized tenants in the premises. 24

13  CFR 982.510(c). SNRHA policy further limits the circumstances for allowable side payments:

14  "Any items, appliances, or other services that are <u>not</u> customarily provided to unassisted

15  families as part of the dwelling lease with those families, are <u>not</u> permanently installed in the

16  dwelling unit and where the family has the sole option of <u>not</u> utilizing the item, appliance or

17  service, may be included in a separate non-lease agreement between the owner and the family."

18  Plaintiff's Motion for Summary Judgment, Exhibit D, Page 9-8 (emphasis included). Thus,

19  while federal regulations and the HAP Contract allow side payments for items not customarily

20  included as rent, SNRHA policy only allows the side payment if the item meets all three

21  criteria.

22          Under SNRHA policy, there is no genuine issue of material fact that the HOA and

23  property management fees failed to satisfy all three criteria for allowable side payments.

24

Defendants required Holmes to pay property management fees and the HOA fees as part of her tenancy, and Holmes did not have the option of removing the HOA or property management services. Affidavit of Lakeysha Holmes in Support of Motion for Summary Judgment ¶ 9. Even if HOA and property management fees were not customarily included as part of leasing the unit, Holmes lacked the sole option of rejecting the HOA and property management fees and lacked the option of removing the HOA and property management fees from the unit. Thus, Defendants could not charge HOA or property management fees under SNRHA policy.

Property management fees are not allowable side payments under federal regulations and the HAP Contract as well. Neither the Sample Lease from the Greater Las Vegas Association of Realtors (See Exhibit A) or the Sample Lease from Nevada State Apartment Association (See Exhibit B) mention that property management fees are charges to consider against the tenant. This makes sense because property managers charge property owners for their services. After all, property managers work for property owners, not tenants. Thus, property management fees are not allowable side payments under the HAP Contract, federal regulations or SNRHA policy.

The only issue is whether HOA fees are allowable side payments under federal regulations and the HAP Contract. HOA fees are merely an optional charge for tenants under the Utilities section of the Sample Lease from the Greater Las Vegas Association of Realtors (See Exhibit A). Just because HOA fees are optional does not mean HOA fees are not customarily the responsibility of landlords and included in rent. The Sample Lease from Nevada State Apartment Association establishes that HOA are customarily included as rent because the Sample Lease does not even provide the option of charging separate HOA fees to tenants (See Exhibit B). Moreover, Defendants have failed to provide any evidence that HOA fees are not

6

customarily included as part of rent. Thus, HOA fees may be customarily included as rent in leases, and if so, then HOA fees are not allowable side payments under the HAP Contract and federal law.

DATED this _10_ day of _March_, 2015.

Respectfully Submitted,

RON SUNG, ESQ.
Nevada State Bar No. 13047C
I. KRISTINE BERGSTROM, ESQ.
Nevada State Bar No. 10841
Nevada Legal Services, Inc.
530 South Sixth Street
Las Vegas, Nevada 89101
(702) 386-0404 x148
Facsimile (702) 388-1641
*Attorneys for Plaintiff Lakeysha Holmes*

## CERTIFICATE OF MAILING

I hereby certify that on this _10_ day of _March_ , 2015, I served the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT upon the following person(s), by depositing a copy of same in a sealed envelope in the United States Mail, postage pre-paid, to the following:

BENJAMIN CHILDS, ESQ.
318 S. Maryland Parkway
Las Vegas NV 89101


An Employee of Nevada Legal Services

1

Exhibit A

# RESIDENTIAL LEASE AGREEMENT
### for

 

_____
(Property Address)

1  **1.  This AGREEMENT** is entered into this _____ day of _____, _____, between

2  _____ , ("LANDLORD") legal owner of the property through the Owner's
3  BROKER, _____ , ("BROKER") and
4
5  Tenant's Name: _____    Tenant's Name: _____
6
7  Tenant's Name: _____    Tenant's Name: _____
8
9  (collectively, "TENANT"), which parties hereby agree to as follows:
10
11  **2.  SUMMARY:** The initial rents, charges and deposits are as follows:

| 12 | Total Amount | Received | Balance Due Prior to Occupancy |
|---|---|---|---|
| 15 Rent: From _____ , To _____ | $ _____ | $ _____ | $ _____ |
| 16 Security Deposit | $ _____ | $ _____ | $ _____ |
| 17 Key Deposit | $ _____ | $ _____ | $ _____ |
| 18 Admin Fee/Credit App Fee (Non-refundable) | $ _____ | $ _____ | $ _____ |
| 19 Pet Deposit | $ _____ | $ _____ | $ _____ |
| 20 Cleaning Deposit | $ _____ | $ _____ | $ _____ |
| 21 Last Month's Rent Security | $ _____ | $ _____ | $ _____ |
| 22 CIC Registration | $ _____ | $ _____ | $ _____ |
| 23 Utility Proration | $ _____ | $ _____ | $ _____ |
| 24 Sewer/Trash Proration | $ _____ | $ _____ | $ _____ |
| 25 Other _____ | $ _____ | $ _____ | $ _____ |
| 26 Other _____ | $ _____ | $ _____ | $ _____ |
| 27 Other _____ | $ _____ | $ _____ | $ _____ |
| 28 Other _____ | $ _____ | $ _____ | $ _____ |
| 29 TOTAL | $ _____ | $ _____ | $ _____ |

30  **(Any balance due prior to occupancy to be paid in CERTIFIED FUNDS)**
31
32  **3.  ADDITIONAL MONIES DUE:** _____
33  _____
34  _____
35
36  **4.  PREMISES:** Landlord hereby leases to TENANT and TENANT hereby leases from Landlord, subject to the terms
37  and conditions of the lease, the Premises known and designated as _____
38  _____ consisting of _____ ("the Premises").
39
40  **5.  TERM:** The term hereof shall commence on _____ and continue until
41  _____ , for a total rent of $ _____ , then on a month-to-month basis
42  thereafter, until either party shall terminate the same by giving the other party thirty (30) days written notice
43  delivered by certified mail (all calculation based on 30 day month).
44
45  **6.  RENT:** TENANT shall pay rent at the monthly rate of $ _____ , in advance, on the _____ day
46  of every month beginning the _____ day of _____ , _____ and delinquent after
47  _____ . There is no grace period. If rent is delinquent, it must be paid in the form of certified funds.
48

Residential Lease Agreement Rev. 05/12     Landlord _____    Tenant _____    Tenant _____
Page 1 of 9                                                    Tenant _____    Tenant _____
© 2012 Greater Las Vegas Association of REALTORS®              Property: _____

Southwest Mgmt Group 7560 W Sahara #107 Las Vegas, NV 89117                Phone: (702)871-5177      Fax:  (702)871-7910                              Untitled
Mario Malatesta
                        Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**7. PLACE OF PAYMENTS:** TENANT shall make all payments payable to _____ and shall mail such payments to: _____ _____ -or- _____ hand deliver such payments to _____ during normal business hours.

**8. ADDITIONAL FEES:**

    **A. LATE FEES:** In the event TENANT fails to pay rent when due, TENANT shall pay a late fee of $ _____ plus $ _____ per day for each day after _____ days that the sum was due.

    **B. DISHONORED CHECKS:** A charge of $ _____ shall be imposed for each dishonored check made by TENANT to LANDLORD. TENANT agrees to pay all rents, all late fees, all notice fees and all costs to honor a returned check with certified funds. After TENANT has tendered a check which is dishonored, TENANT hereby agrees to pay all remaining payments including rent due under this Agreement by certified funds. Any payments tendered to LANDLORD thereafter, which are not in the form of certified funds, shall be treated as if TENANT failed to make said payment until certified funds are received. LANDLORD presumes that TENANT is aware of the criminal sanctions and penalties for issuance of a check which TENANT knows is drawn upon insufficient funds and which is tendered for the purpose of committing a fraud upon a creditor.

    **C. ADDITIONAL RENT:** All late fees and dishonored check charges shall be due when incurred and shall become additional rent. **Payments will be applied to charges which become rent in the order accumulated.** All unpaid charges or any fees owed by TENANT, including but not limited to notice fees, attorney's fees, repair bills, utility bills, landscape/pool repair and maintenance bills and CIC fines will become additional rent at the beginning of the month after TENANT is billed. TENANT'S failure to pay the full amount for a period may result in the initiation of eviction proceedings. LANDLORD'S acceptance of any late fee or dishonored check fee shall not act as a waiver of any default of TENANT, nor as an extension of the date on which rent is due. LANDLORD reserves the right to exercise any other rights and remedies under this Agreement or as provided by law.

**9. SECURITY DEPOSITS:** Upon execution of this Agreement, TENANT shall deposit with LANDLORD as a Security Deposit the sum stated in paragraph 2. **TENANT shall not apply the Security Deposit to, or in lieu of, rent.** At any time during the term of this Agreement and upon termination of the tenancy by either party for any reason, the LANDLORD may claim, from the Security Deposit, such amounts due Landlord under this Agreement. Any termination prior to the initial term set forth in paragraph 5, or failure of TENANT to provide proper notice of termination, is a default in the payment of rent for the remainder of the lease term, which may be offset by the Security Deposit. Pursuant to NRS 118A.242, LANDLORD shall provide TENANT with a written, itemized accounting of the disposition of the Security Deposit within thirty (30) days of termination. TENANT agrees, upon termination of the tenancy, to provide LANDLORD with a forwarding address to prevent a delay in receiving the accounting and any refund.

**10. TRUST ACCOUNTS:** BROKER shall retain all interest earned, if any, on security deposits to offset administration and bookkeeping fees.

**11. EVICTION COSTS:** TENANT shall be charged an administrative fee of $ _____ per eviction attempt to offset the costs of eviction notices and proceedings. TENANT may be charged for service of legal notices and all related fees according to actual costs incurred.

**12. CARDS AND KEYS:** Upon execution of the Agreement, TENANT shall receive the following:
_____ Door key(s)    _____ Garage Transmitter(s)    _____ Other(s) _____
_____ Mailbox key(s)    _____ Gate Card(s)    _____ Other(s) _____
_____ Laundry Room key(s)    _____ Gate Transmitter(s)    _____ Other(s) _____
Tenant shall make a key deposit (if any) in the amount set forth in paragraph 2 upon execution of this Agreement. The key deposit shall be refunded within 30 days of Tenant's return of all cards and/or keys to Landlord or Landlord's BROKER.

SAMPLE

**13. CONVEYANCES AND USES:** TENANT shall not assign, sublet or transfer TENANT'S interest, nor any part thereof, without prior written consent of LANDLORD. TENANT shall use the Premises for residential purposes only and not for any commercial enterprise or for any purpose which is illegal. TENANT shall not commit waste, cause excessive noise, create a nuisance or disturb others.

**14. OCCUPANTS:** Occupants of the Premises shall be limited to _____ persons and shall be used solely for housing accommodations and for no other purpose. TENANT represents that the following person(s) will live in the Premises: _____
_____

**15. GUESTS:** The TENANT agrees to pay the sum of $ _____ per day for each guest remaining on the Premises more than _____ days. Notwithstanding the foregoing, in no event shall any guest remain on the Premises for more than _____ days.

**16. UTILITIES:** LESSEE shall immediately connect all utilities and services of premises upon commencement of lease. LESSEE is to pay when due all utilities and other charges in connection with LESSEE's individual rented premises. Responsibility is described as (T) for Tenant and (O) for Owner:

Electricity _____     Trash _____     Phone _____     Other _____
Gas _____     Sewer _____     Cable _____     Other _____
Water _____     Septic _____     Association Fees _____

    a. TENANT is responsible to connect the following utilities in TENANT'S name: _____
_____
    b. LANDLORD will maintain the connection of the following utilities in LANDLORD's name and bill TENANT for connection fees and use accordingly. _____
_____
    c. No additional phone or cable lines or outlets shall be obtained for the Premises without the LANDLORD's written consent. In the event of LANDLORD's consent, TENANT shall be responsible for all costs associated with the additional lines or outlets.
    d. If an alarm system exists on the Premises, TENANT shall obtain the services of an alarm services company and shall pay all costs associated therewith.
    e. Other: _____
_____

**17. PEST NOTICE:** TENANT understands that various pest, rodent and insect species (collectively, "pests") exist in Southern Nevada. Pests may include, but are not limited to, scorpions (approximately 23 species, including bark scorpions), spiders (including black widow and brown recluse), bees, snakes, ants, termites, rats, mice and pigeons. The existence of pests may vary by season and location. Within thirty (30) days of occupancy, if the Premises has pests, LANDLORD, at TENANT's request, will arrange for and pay for the initial pest control spraying. TENANT agrees to pay for the monthly pest control spraying fees. The names and numbers of pest control providers are in the yellow pages under "PESTS". For more information on pests and pest control providers, TENANT should contact the State of Nevada Division of Agriculture at www.agri.nv.gov.

**18. PETS:** No pet shall be on or about the Premises at any time without written permission of LANDLORD. In the event TENANT wishes to have a pet, TENANT will complete an Application for Pet Approval. Should written permission be granted for occupancy of the designated pet, an additional security deposit in the amount of $ _____ will be required and paid by TENANT in advance subject to deposit terms and conditions aforementioned. In the event written permission shall be granted, TENANT shall be required to procure and provide to Landlord written evidence that TENANT has obtained such insurance as may be available against property damage to the Premises and liability to third party injury. Each such policy shall name LANDLORD and LANDLORD'S AGENT as additional insureds. A copy of each such policy shall be provided to Landlord or Landlord's BROKER prior to any pets being allowed within the Premises. If TENANT obtains a pet without written permission of LANDLORD, TENANT agrees to pay an immediate fine of $500. TENANT agrees to indemnify LANDLORD for any and all liability, loss and

Residential Lease Agreement Rev. 05/12
Page 3 of 9
© 2012 Greater Las Vegas Association of REALTORS®

Landlord _____     Tenant _____     Tenant _____
                                         Tenant _____     Tenant _____
                                         Property: _____

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Untitled

damages which LANDLORD may suffer as a result of any animal in the Premises, whether or not written permission was granted.

**19. RESTRICTIONS:** TENANT shall not keep or permit to be kept in, on, or about the Premises: waterbeds, boats, campers, trailers, mobile homes, recreational or commercial vehicles or any non-operative vehicles except as follows: _____ .
**TENANT shall not conduct nor permit any work on vehicles on the premises.**

**20. ALTERATIONS:** TENANT shall make no alterations to the Premises without LANDLORD's written consent. All alterations or improvements made to the Premises, shall, unless otherwise provided by written agreement between parties hereto, become the property of LANDLORD and shall remain upon the Premises and shall constitute a fixture permanently affixed to the Premises. In the event of any alterations, TENANT shall be responsible for restoring the Premises to its original condition if requested by LANDLORD or LANDLORD's BROKER.

**21. DEFAULT:** Failure by TENANT to pay rent, perform any obligation under this Agreement, or comply with any Association Governing Documents (if any), or TENANT's engagement in activity prohibited by this Agreement, or TENANT's failure to comply with any and all applicable laws, shall be considered a default hereunder. Upon default, LANDLORD may, at its option, terminate this tenancy upon giving proper notice. Upon default, LANDLORD shall issue a proper itemized statement to TENANT noting the amount owed by TENANT. LANDLORD may pursue any and all legal and equitable remedies available.

**22. ENFORCEMENT:** Any failure by LANDLORD to enforce the terms of this Agreement shall not constitute a waiver of said terms by LANDLORD. Acceptance of rent due by LANDLORD after any default shall not be construed to waive any right of LANDLORD or affect any notice of termination or eviction.

**23. NOTICE OF INTENT TO VACATE:** TENANT shall provide notice of TENANT's intention to vacate the Premises at the expiration of this Agreement. **Such notice shall be in writing and shall be provided to LANDLORD prior to the first day of the last month of the lease term set forth in section 5 of this Agreement. In no event shall notice be less than 30 days prior to the expiration of the term of this Agreement.** In the event TENANT fails to provide such notice, TENANT shall be deemed to be holding-over on a month-to-month basis until 30 days after such notice. During a holdover not authorized by LANDLORD, rent shall increase by _____ %.

**24. TERMINATION:** Upon termination of the tenancy, TENANT shall surrender and vacate the Premises and shall remove any and all of TENANT'S property. TENANT shall return keys, personal property and Premises to the LANDLORD in good, clean and sanitary condition, normal wear excepted. TENANT will allow LANDLORD to inspect the Premises in the TENANT's presence to verify the condition of the Premises.

**25. EMERGENCIES:** The name, address and phone number of the party who will handle maintenance or essential services emergencies on behalf of the LANDLORD is as follows: _____
_____

**26. MAINTENANCE:** TENANT shall keep the Premises in a clean and good condition. TENANT shall immediately report to the LANDLORD any defect or problem pertaining to plumbing, wiring or workmanship on the Premises. TENANT agrees to notify LANDLORD of any water leakage and/or damage within 24 hours of the occurrence. TENANT understands that TENANT may be held responsible for any water and/or mold damage, including the costs of remediation of such damage. TENANT shall be responsible for any **MINOR** repairs necessary to the Premises up to and including the cost of $ _____ . TENANT agrees to pay for all repairs, replacements and maintenance required by TENANT's misconduct or negligence or that of TENANT's family, pets, licensees and guests, including but not limited to any damage done by wind or rain caused by leaving windows open and/or by overflow of water, or stoppage of waste pipes, or any other damage to appliances, carpeting or the building in general. At LANDLORD's option, such charges shall be paid immediately or be regarded as additional rent to be paid no later than the next monthly payment date following such repairs.

Residential Lease Agreement Rev. 05/12
Page 4 of 9
© 2012 Greater Las Vegas Association of REALTORS®

Landlord _____   Tenant _____   Tenant _____
                            Tenant _____   Tenant _____
                            Property: _____

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Untitled

a. TENANT shall change filters in the heating and air conditioning systems at least once every month, at TENANT's own expense. LANDLORD shall maintain the heating and air conditioning systems and provide for major repairs. However, any repairs to the heating or cooling system caused by dirty filters due to TENANT neglect will be the responsibility of TENANT.

b. TENANT shall replace all broken glass, regardless of cause of damage, at TENANT's expense.

c. In the case of landscaping and/or a swimming pool being maintained by a contractor, TENANT agrees to cooperate with the landscape and/or pool contractor in a satisfactory manner. LANDLORD provided landscaping maintenance is not to be construed as a waiver of any responsibility of the TENANT to keep and maintain the landscaping and/or shrubs, trees and sprinkler system in good condition. In the event the landscaping is not being maintained by a Contractor, TENANT shall maintain lawns, shrubs and trees. TENANT shall water all lawns, shrubs and trees, mow the lawns on a regular basis, trim the trees and fertilize lawns, shrubs and trees. If TENANT fails to maintain the landscaping in a satisfactory manner, LANDLORD may have the landscaping maintained by a landscaping contractor and charge TENANT with the actual cost. Said costs shall immediately become additional rent.

d. LANDLORD shall be responsible for all major electrical problems that are not caused by TENANT.

e. TENANT ____ shall -OR- ____ shall not have carpets professionally cleaned upon move out. If cleaned, TENANT shall present LANDLORD or LANDLORD's BROKER with a receipt from a reputable carpet cleaning company.

f. There ____ is -OR- ____ is not a pool contractor whose name and phone number are as follows: _____ _____ .
If there is no such contractor, TENANT agrees to maintain the pool, if any. TENANT agrees to maintain the water level, sweep, clean and keep in good condition. If TENANT fails to maintain the pool in a satisfactory manner, LANDLORD may have the pool maintained by a licensed pool service and charge TENANT with the actual cost.  Said costs shall become additional rent.

**27. ACCESS:** TENANT agrees to grant LANDLORD the right to enter the Premises at all reasonable times and for all reasonable purposes including showing to prospective lessees, buyers, appraisers or insurance agents or other business therein as requested by LANDLORD, and for BROKER's periodic maintenance reviews. If TENANT fails to keep scheduled appointments with vendors to make necessary/required repairs, TENANT shall pay for any additional charges incurred which will then become part of the next month's rent and be considered additional rent. TENANT shall not deny LANDLORD his/her rights of reasonable entry to the Premises. LANDLORD shall have the right to enter in case of emergency and other situations as specifically allowed by law. LANDLORD agrees to give TENANT twenty-four (24) hours notification for entry, except in case of emergency.

**28. INVENTORY:** It is agreed that the following inventory is now on said premises. (Check if present; cross out if absent.)

| | | | | |
|---|---|---|---|---|
| _____ Refrigerator | _____ Intercom System | _____ Spa Equipment | _____ | _____ |
| _____ Stove | _____ Alarm System | _____ Auto Sprinklers | _____ | _____ |
| _____ Microwave | _____ Trash Compactor | _____ Auto Garage Openers | _____ | _____ |
| _____ Disposal | _____ Ceiling Fans | _____ BBQ | _____ | _____ |
| _____ Dishwasher | _____ Water Conditioner Equip. | _____ Solar Screens | _____ | _____ |
| _____ Washer | _____ Floor Coverings | _____ Pool Equipment | _____ | _____ |
| _____ Dryer | _____ Window Coverings | _____ Other | _____ | _____ |

TENANT assumes responsibility for the care and maintenance thereof.

**29. ASSOCIATIONS:** Should the Premises described herein be a part of a common interest community, homeowners association planned unit development, condominium development ("the Association") or such, TENANT hereby agrees to abide by the Governing Documents (INCLUDING Declarations, Bylaws, Articles, Rules and Regulations) of such project and further agrees to be responsible for any fines or penalties levied as a result of failure to do so by himself, his family, licensees or guests. Noncompliance with the Governing Documents shall constitute a violation of this Agreement. Unless billed directly to TENANT by the Association, such fines shall be considered as an addition to rent and shall be due along with the next monthly payment of rent. By initialing this paragraph, TENANT acknowledges receipt of a copy of the applicable Governing Documents. LANDLORD at LANDLORD's expense, shall provide TENANT with any additions to such Governing Documents as they become available. LANDLORD may, at its option, with 30 days notice to TENANT, adopt additional reasonable rules and regulations governing use of the Premises and of the common areas (if any).   [ _____ ] [ _____ ] [ _____ ] [ _____ ]

**30. INSURANCE:** TENANT __ is -OR- __ is not required to purchase renter's insurance. LANDLORD and BROKER shall be named as additional interests on any such policy. LANDLORD shall not be liable for any damage or injury to TENANT, or any other person, to any property occurring on the Premises or any part thereof, or in common areas thereof. TENANT agrees to indemnify, defend and hold LANDLORD harmless from any claims for damages. TENANT understands that LANDLORD's insurance does not cover TENANT's personal property. Even if it is not a requirement of this Agreement, TENANT understands that LANDLORD highly recommends that TENANT purchase renter's insurance.

**31. ILLEGAL ACTIVITIES PROHIBITED:** TENANT is aware of the following: It is a misdemeanor to commit or maintain a public nuisance as defined in NRS 202.450 or to allow any building or boat to be used for a public nuisance. Any person, who willfully refuses to remove such a nuisance when there is a legal duty to do so is, is guilty of a misdemeanor. A public nuisance may be reported to the local sheriff's department. A violation of building, health or safety codes or regulations may be reported to the government entity in our local area such as the code enforcement division of the county/city government or the local health or building departments.

**32. ADDITIONAL RESPONSIBILITIES:**

a. TENANT may install or replace screens at TENANT's own expense. Solar screen installation requires written permission from LANDLORD.  LANDLORD is not responsible for maintaining screens.

b. With the exception of electric cooking devices, outdoor cooking with portable barbecuing equipment is prohibited within ten (10) feet of any overhang, balcony or opening, unless the Premises is a detached single family home. The storage and/or use of any barbecuing equipment is prohibited indoors, above the first floor and within five (5) feet of any exterior building wall. Adult supervision is required at all times the barbecue equipment is generating heat.

c. The Premises __ have -OR- __ have not been freshly painted. If not freshly painted, the Premises __ have -OR- __ have not been touched up. TENANT will be responsible for the costs for any holes or excessive dirt or smudges that will require repainting.

d. TENANT agrees to coordinate transfer of utilities to LANDLORD or BROKER no less than _____ business days of vacating the Premises.

e. Locks may be replaced or re-keyed at the TENANT'S expense provided TENANT informs LANDLORD and provides LANDLORD with a workable key for each new or changed lock.

f. TENANT may conduct a risk assessment or inspection of the Premise for the presence of lead-based paint and/or lead-based paint hazards at the TENANT's expense for a period of ten days after execution of this agreement. Such assessment or inspection shall be conducted by a certified lead-based paint professional. If TENANT for any reason fails to conduct such an assessment or inspection, then TENANT shall be deemed to have elected to lease the Premises "as is" and to have waived this contingency. If TENANT conducts such an assessment or inspection and determines that lead-based paint deficiencies and/or hazards exist, TENANT will

notify LANDLORD in writing and provide a copy of the assessment/inspection report. LANDLORD will then have ten days to elect to correct such deficiencies and/or hazards or to terminate this agreement. In the event of termination under this paragraph, the security deposit will be refunded to TENANT. (If the property was constructed prior to 1978, refer to the attached Lead-Based Paint Disclosure.)

g. TENANT may display the flag of the United States, made of cloth, fabric or paper, from a pole, staff or in a window, and in accordance with 4 USC Chapter 1. LANDLORD may, at its option, with 30 days notice to TENANT, adopt additional reasonable rules and regulations governing the display of the flag of the United States.

h. TENANT may display political signs subject to any applicable provisions of law governing the posting of political signs, and, if the Premises are located within a CIC, the provisions of NRS 116 and any governing documents related to the posting of political signs. All political signs exhibited must not be larger than 24 inches by 36 inches. LANDLORD may not exhibit any political sign on the Premises unless the tenant consents, in writing, to the exhibition of the political sign. TENANT may exhibit as many political signs as desired, but may not exhibit more than one political sign for each candidate, political party or ballot question.

**33. CHANGES MUST BE IN WRITING:** No changes, modifications or amendment of this Agreement shall be valid or binding unless such changes, modifications or amendment are in writing and signed by each party. Such changes shall take effect after thirty days notice to TENANT.

**34. CONFLICTS BETWEEN LEASE AND ADDENDUM:** In case of conflict between the provisions of an addendum and any other provisions of this Agreement, the provisions of the addendum shall govern.

**35. ATTORNEY'S FEES:** In the event of any court action, the prevailing party shall be entitled to be awarded against the losing party all costs and expenses incurred thereby, including, but not limited to, reasonable attorney's fees and costs.

**36. NEVADA LAW GOVERNS:** This Agreement is executed and intended to be performed in the State of Nevada in the county where the Premises are located and the laws of the State of Nevada shall govern its interpretation and effect.

**37. WAIVER:** Nothing contained in this Agreement shall be construed as waiving any of the LANDLORD's or TENANT's rights under the laws of the State of Nevada.

**38. PARTIAL INVALIDITY:** In the event that any provision of this Agreement shall be held invalid or unenforceable, such ruling shall not affect in any respect whatsoever the validity or enforceability of the remainder of this Agreement.

**39. VIOLATIONS OF PROVISIONS:** A single violation by TENANT of any of the provisions of this Agreement shall be deemed a material breach and shall be cause for termination of this Agreement. Unless otherwise provided by the law, proof of any violation of this Agreement shall not require criminal conviction but shall be by a preponderance of the evidence.

**40. SIGNATURES:** The Agreement is accepted and agreed to jointly and severally. The undersigned have read this Agreement and understand and agree to all provisions thereof and further acknowledge that they have received a copy of this Agreement.

**41. LICENSEE DISCLOSURE OF INTEREST:** Pursuant to NAC 645.640, _____ is a licensed real estate agent in the State(s) of _____ , and has the following interest, direct or indirect, in this transaction: ☐ Principal (LANDLORD or TENANT) **-OR-** ☐ family relationship or business interest: _____ .

**42. CONFIRMATION OF REPRESENTATION:** The Agents in this transaction are:

Tenant's Broker: _____ Agent's Name: _____
Address: _____
Phone: _____ Fax: _____ Email: _____
License # _____

Landlord's Broker: _____ Agent's Name: _____
Address: _____
Phone: _____ Fax: _____ Email: _____
License # _____

**43. NOTICES:** Unless otherwise required by law, any notice to be given or served upon any party hereto in connection with this Agreement must be in writing and mailed by certificate of mailing to the following addresses:

BROKER: _____
Address: _____
Phone: _____ Fax: _____ Email: _____

TENANT: _____
Address: _____
Phone: _____ Fax: _____ Email: _____

**44. ADDENDA ATTACHED:** Incorporated into this Agreement are the following addenda, exhibits and other information:

A. ☐ Lease Addendum for Drug Free Housing
B. ☐ Smoke Detector Agreement
C. ☐ Other: _____
D. ☐ Other: _____
E. ☐ Other: _____

**[This space is intentionally blank.]**

Residential Lease Agreement Rev. 05/12
Page 8 of 9
© 2012 Greater Las Vegas Association of REALTORS®

Landlord _____ Tenant _____ Tenant _____
Tenant _____ Tenant _____
Property: _____

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Untitled

1  **45. ADDITIONAL TERMS AND CONDITIONS:** _____

2  _____

3  _____

4  _____

5  _____

6  _____

7  _____

8  _____

9  _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 LANDLORD/OWNER OF RECORD NAME          TENANT'S SIGNATURE               DATE

23                                         Print Name: _____

24                                         Phone: _____

25 _____

26

27 MANAGEMENT COMPANY (BROKER) NAME      TENANT'S SIGNATURE               DATE

28                                         Print Name: _____

29                                         Phone: _____

30

31 By _____

32 Authorized AGENT for BROKER SIGNATURE   DATE   TENANT'S SIGNATURE        DATE

33                                         Print Name: _____

34 ☐ REALTOR®                              Phone: _____

35

36                                         _____

37                                         TENANT'S SIGNATURE               DATE

38                                         Print Name: _____

39                                         Phone: _____

40

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Untitled

Exhibit B

# Apartment Lease Contract



**NATIONAL APARTMENT ASSOCIATION**

Date of Lease Contract: _____
(when the Lease Contract is filled out)

This is a binding document. Read carefully before signing.

## Moving In -- General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) (*list all people signing the Lease Contract*):

_____
_____
_____
_____
and *us*, the owner:
_____
_____
(*name of apartment community or title holder*). You've agreed to rent Apartment No. _____ , at _____
_____ (street address) in _____ (city), Nevada,
_____ (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

Disclosure Notice: Name and address of the person or company authorized to manage the premises: _____
_____
Name and address of the person or company authorized to receive service of process, demands, and notices: _____
_____
Name of principal or corporate owner: _____
_____ . In case of emergency, the telephone number to contact is: _____

**2. OCCUPANTS.** The apartment will be occupied only by you and (*list all other occupants not signing the Lease Contract*):

_____
_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than _____ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the _____ day of _____, and ends at midnight the _____ day of _____. This Lease Contract will automatically renew month-to-month unless either party gives at least _____ days written notice of termination or intent to move out as required by paragraph 37. If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ _____ , due on or before the date this Lease

**5. KEYS AND FURNITURE.** You will be provided _____ apartment key(s), _____ mailbox key(s), and _____ other access devices for _____. Your apartment will be [*check one*]: ☐ furnished or ☐ unfurnished. If the apartment is furnished, the furnishings and condition of the furnishings are provided in a separate attachment.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ _____ per month for rent, payable in advance and without demand:

☐ at the on-site manager's office, or
☐ at our online payment site, or
☐ _____

Prorated rent of $ _____ is due for the remainder of the [*check one*]: ☐ 1st month or ☐ 2nd month.

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all

rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. Upon your request, we will provide you with a signed receipt for all payments. If you don't pay all rent on or before the _____ day of the month, you'll pay a late charge of $ _____ plus a late charge of $ _____ per day after that date until paid in full. You'll also pay a charge of $ _____ for each returned check or rejected electronic payment, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked:

☐ water ☐ gas ☐ electricity ☐ master antenna
☐ wastewater ☐ trash ☐ cable TV ☐ other _____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

We *urge* you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are [*check one*]: ☐ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them.

**What You Are Now Requesting.** You now request the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request:

☐ keyed deadbolt lock ☐ doorviewer
☐ keyless deadbolt ☐ sliding door pinlock
☐ sliding door bar

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

_____
_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVEOUT.** You'll be liable to us for a reletting charge of $ _____ (not to exceed 100% of the highest monthly rent during the lease term) if you:

(1) fail to give written move-out notice as required in paragraphs 23 or 37; or
(2) move out without paying rent in full for the entire lease term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. See the first paragraph of page 2.

**03062015SAMPLE01**

**Not a Release.** The reletting charge is not a lease cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages, that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain-particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

12. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for and you must pay for repairs, replacement costs, and damage to the following if occurring during the lease term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **PROPERTY LEFT IN APARTMENT.** All property left in the apartment is (unless exempt under state statute) subject to disposal if found to be abandoned under Nevada law. For this purpose, "apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After Surrender, Abandonment, or Eviction.** We, our agent, or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 42).

**Storage.** We or our agents will store property removed after judicial eviction, surrender, or abandonment of the apartment for a period of thirty (30) days after the abandonment, eviction, or end of the rental period. You must pay reasonable and actual charges to us for our agent for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for the reasonable cost of packing, removing, and storing the property.

**Redemption.** If we or our agent have removed and stored property as authorized by the state statute, you may redeem the property by paying the reasonable and actual charges for packing, removing, and storing. We may return redeemed property to you at the place of storage, the management office, or the apartment at our option. We or our agent may require payment by cash, money order, or certified check.

**Disposition or Sale.** After complying with the notification and other storage procedures for disposal of personal property abandoned or left on the

18. **COMMUNITY POLICIES OR RULES.** You and your guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules upon thirty (30) days' written notice as stated in Paragraph 15, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

19. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. Without our prior written approval, guests may not occupy an apartment. You and your occupants, or guests may not anywhere in the apartment community, use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited-except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes and you have obtained all necessary local licensing and zoning approvals for business. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

20. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near

premises, we or our agent may dispose of or sell personal property which was abandoned or left in the apartment in order to recover the reasonable and actual costs of packing, removing, and storing the property. We or our agent will make a reasonable effort to locate you and notify you of our intention to dispose of the property as provided by law. Notice will be mailed to you at your present address, and if that address is unknown, then at your last known address. Automobiles will be disposed of in accordance with Chapter 487 of the Nevada Revised Statutes.

14. **FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins you will be in default of this Lease Contract, unless rent is abated or the lease is terminated due to a delay in giving you possession. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraphs 11 and 32 apply to acceleration under this paragraph.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18. If neither party gives proper written notice, as required by paragraph 3, to terminate this lease at the end of the initial lease term, this Lease Contract will automatically continue month-to-month until either we or you give the other party proper written notice as required by paragraph 3, to non-renew or terminate the month-to-month lease. We have the right to increase the monthly rent due by giving you notice of the rent increase at least forty five (45) days in advance of the effective date of the increase. We have the right to adopt or modify rules or regulations concerning your use and occupancy of the premises and to promote the convenience, safety or welfare of us, you or other tenants; or to preserve the property from abusive use; or to make a fair distribution of services and facilities held out for the tenants generally by giving written notice to you thirty (30) days in advance of the effective date of the new rules and regulations. The new modified Lease Contract will begin on the date stated in the notice (without increasing your rent) unless you give us written move-out notice under paragraph 37.

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay except as otherwise provided by law. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled to a refund of all deposit(s), fees, charges, and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't affect the habitability of the apartment or prevent you from occupying the apartment. If we have failed to deliver possession of the apartment to you as provided by law, you may terminate the lease by giving us at least five (5) days' written notice.

17. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

21. **PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

22. **RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 16, 23, 31, or 37, or as otherwise provided under Nevada law regarding our failure to maintain the apartment in habitable condition, failure to deliver possession of the apartment, or other proper reason provided by law, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

23. **MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Lease Contract if:

03062015SAMPLE02

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*

(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 32. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 5.

**Smoke Detectors.** We'll furnish smoke detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector malfunctions to us. Neither you nor others may disable smoke detectors. If you damage or disable the smoke detector or remove a battery without replacing it with a working battery, you may be liable to us under state law for the actual and reasonable cost or fair and reasonable value of the work to repair or restore the smoke detector to working condition. If you disable or damage the smoke detector or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, you must--for 24 hours a day during freezing weather--(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions which materially affect the health or safety of ordinary persons or which render the apartment uninhabitable. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided it complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST--FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS--IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You may promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions. You may also have the right to vacate the premises immediately and notify us in writing within seven (7) days of your intention to terminate the Lease Contract, provided the fire or casualty were not caused by the deliberate or negligent acts of you, a member of your household, or another person on the premises with your consent.

**27. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If you allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. You may remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract or as otherwise provided by law. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules.

**28. WHEN WE MAY ENTER.** Upon giving you any required notice, then we or our repairers, services, contractors, representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times during normal business hours upon giving you twenty four (24) hour advance written notice for the purposes listed in (2) below or as otherwise authorized by law. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies). We also have the right to enter your apartment without giving a 24 hour notice in case of an emergency.

(1) In addition to any notice required by law, we will attempt to provide you written notice of the entry by leaving a copy in a conspicuous place in the apartment immediately after the entry.

(2) We have the right to enter the apartment for any authorized reason recognized by law, including, but not limited to: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; removing health or safety hazards (including hazardous materials); inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

03062015SAMPLE03

29. **MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 42.

---

## Replacements

30. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(1) a reletting charge will not be due;

(2) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

(3) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; *or* (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing or unless otherwise provided by law, the departing resident will remain liable for the remainder of the original lease term-even if a new Lease Contract is signed.

---

## Responsibilities of Owner and Resident

31. **RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) maintain fixtures, furniture, hot water, heating and A/C equipment;

(2) substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(3) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may exercise your remedies under state law. In addition to complying with any other requirements under state law:

(a) you must make a written request for repair or remedy of the condition, and all rent must be current at the time;

(b) after receiving the request, we will have the time provided by law to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;

(c) if we haven't completed the repair within the time provided by law, you may have certain rights afforded by law to make repairs yourself or terminate the lease. If the lease is properly terminated, then security deposits and prorated rent will be refunded as required by law.

32. **DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answer in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in the types of prohibited conduct described in Paragraph 20; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government based on a complaint that was caused primarily by the lack of reasonable care by you, a member of your household, or another person on the premises with your consent.

Eviction. If you default, we may end your right of occupancy by giving you a five (5) day written notice as provided by Nevada law. Notice will be delivered to you as required by Nevada law. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages, past or future rent or other sums; or to continue with eviction proceedings.

Holdover. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) we may hold you liable for our actual damages, and (3) you could be held liable by the next intended occupant of the apartment if you fail to vacate the premises.

Other Remedies. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in addition to other sums due. Even on your default, we have all other legal remedies, including lease termination and lockout under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and/or other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not our attorney's fees and litigation costs). All unpaid amounts bear a reasonable amount of interest not to exceed 7% per annum from due date or such other interest rate as specified or allowed by Nevada law.

Mitigation of Damages. If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

---

## General Clauses

33. **MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All lease obligations must be performed in the county where the apartment is located.

WAIVER OF JURY TRIAL. TO MINIMIZE LEGAL EXPENSES AND, TO THE EXTENT ALLOWED BY LAW, YOU AND WE AGREE THAT A TRIAL OF ANY LAWSUIT BASED ON STATUTE, COMMON LAW, AND/OR RELATED TO THIS LEASE CONTRACT SHALL BE TO A JUDGE AND NOT A JURY.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

Obligation to Vacate. Resident shall vacate the Premises and removal all of Resident's personal property therefrom at the expiration of the lease term without further notice or demand from Owner.

Notice: NRS 202.470 Maintaining or permitting nuisance: Penalty. Every person who:
1. Shall commit or maintain a public nuisance, for which no special punishment is prescribed; or
2. Shall willfully omit or refuse to perform any legal duty relating to the removal of such nuisance; or
3. Shall let, or permit to be used, any building or boat, or portion thereof, knowing that it is intended to be, or is being used, for committing or maintaining any such nuisance, shall be guilty of a misdemeanor.

You have the right to engage in the display of the US Flag.

FORCE MAJEURE: If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

03062015SAMPLE04

**34. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent–regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**35. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## Security Guidelines for Residents

**36. SECURITY GUIDELINES.** In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY--WHILE INSIDE YOUR APARTMENT**

1. Lock your doors and windows--even while you're inside.
2. Engage the keyless deadbolts on all doors while you're inside.
3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone--regardless of whether the person is a stranger or an apartment maintenance or management employee.
5. Don't put your name, address, or phone number on your key ring.
6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks. You have a right to have that done, as long as you pay for the rekeying.
7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8. Check your smoke detector monthly to make sure it is working properly and the batteries are still okay.
9. Check your doorlocks, window latches, and other devices regularly to be sure they are working properly.
10. If your doors or windows are insecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management--in writing, dated and signed--any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.
12. Immediately report to management--in writing, dated and signed--any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY--WHILE OUTSIDE YOUR APARTMENT**

15. Lock your doors while you're gone. Use any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume this responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspapers picked up daily by a friend.
25. Carry your door key in your hand whether it is daylight or dark, when walking to your entry door. You're more vulnerable when looking for your key than if you have it ready.

**PERSONAL SECURITY--WHILE USING YOUR CAR**

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car–whether it is daylight or dark and whether your car is at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.
31. Check the back seat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night--or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**

No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

## When Moving Out

**37. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire lease term if you move out early (paragraph 22), unless your move is based on any special stipulations (paragraph 10), a delay in taking occupancy (paragraph 16), the military clause (paragraph 23), or as otherwise provided under Nevada law regarding your rights relating to habitability of the apartment. YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

· We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

· Your move-out notice must not terminate the Lease Contract sooner than the end of the lease term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract at the end of the initial lease term or any month-to-month extension, we must give you the same advance notice–unless you are in default and in which case Nevada law would provide for different notice periods for us to terminate your lease.

**38. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full or you are otherwise permitted to

move as provided by Nevada law. An improper early move-out may result in reletting charges and default under paragraphs 11 and 32. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**39. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**40. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**41. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the

**03062015SAMPLE05**

© 2012, National Apartment Association, Inc. - 5/2012, Nevada

apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraphs 6 and 27; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges in the amount of $ _____ ; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus court costs and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for:  (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date; (2) rent if you have violated paragraph 32; and (3) a reletting fee if you have violated paragraph 11.

**42. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after termination of your tenancy, surrender or abandonment, unless statutes provide otherwise.

You have surrendered the apartment when:  (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; (2) you have removed all or substantially all of your property; and (3) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid.

You have abandoned the apartment when all of the following have occurred:  (1) you have been absent from the apartment for at least fifteen (15) days; (2) you've been in default for non-payment of rent; and (3) you have not given us notice of your intent to be absent from the apartment during this period of time.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to:  clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

## Signatures, Originals and Attachments

**43. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures-one for you and one or more for us.  Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing.  When an Inventory and Condition form is completed, both you and we should retain a copy.  The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☐ Animal Addendum
- ☐ Inventory and Condition Form
- ☐ Mold Addendum
- ☐ Enclosed Garage Addendum
- ☐ Community Policies Addendum
- ☐ Lease Contract Guaranty (_____ guarantees if more than one)
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: _____)
- ☐ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☐ Lead Hazard Information and Disclosure Addendum (federal)
- ☐ Utility Addendum
- ☐ Remote Control, Card or Code Access Gate Addendum
- ☐ Lease Contract Buy-Out Agreement
- ☐ Intrusion Alarm Addendum
- ☐ Other
- ☐ Other

**Date form is filled out** *(same as on top of page 1).*

You are legally bound by this document.
Read it carefully before signing.

**Resident or Residents** *(all sign below)*

**Owner or Owner's Representative** *(signing on behalf of owner)*

**Address and phone number of owner's representative for notice purposes**

**Name and address of locator service** (if applicable)

**SPECIAL PROVISIONS (CONTINUED FROM PAGE 1).**

*NOT A VALID FORM*
*SAMPLE*

03062015SAMPLE06