# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. LAKEYSHA HOLMES, Relatrix, and LAKEYSHA HOLMES, | Case No. 2:13-CV-02149-APG-GWF |
| Plaintiffs, | **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| WIN WIN REAL ESTATE, INC., a Nevada Corporation; MOONLIT PROPERTIES, LLC, a Nevada Limited Liability Corporation; FAISAL CHAUDHRY and SARAH CHAUDHRY, | (Dkt. #30, #32) |
| Defendants. | |

Plaintiff Lakeysha Holmes brings a qui tam action on behalf of the United States pursuant to the False Claims Act (the "FCA"), 31 U.S.C. § 3729 *et seq*. Ms. Holmes asserts that defendants Win Win Real Estate, Inc., Moonlit Properties, LLC, and Faisal and Sarah Chaudhry misrepresented the amount of rent they were charging Ms. Holmes, whose rent was being subsidized by the United States Department of Housing and Urban Development ("HUD"). Ms. Holmes also alleges that defendant Moonlit violated Nevada Revised Statutes § 118A.242 by failing to return Ms. Holmes' security deposit after she vacated the rental property and by failing to provide her with a written, itemized accounting of any deductions they made from her security deposit within 30 days of her moving out.

Defendant Moonlit brings counterclaims against Ms. Holmes for breach of contract and negligence. Moonlit alleges that prior to vacating the property Ms. Holmes intentionally caused significant damage to the residence, which Moonlit was forced to repair.

Ms. Holmes now seeks summary judgment on both her FCA and state law claims. Defendants move for summary judgment as to Ms. Holmes' FCA claim.[1]

---

[1] Neither party has moved for summary judgment as to Moonlit's counterclaims.

## I. BACKGROUND

In December 2011, Lakeysha Holmes leased a house at 17 Blue Sunrise Avenue, North Las Vegas, Nevada (the "Property") from defendants Faisal and Sarah Chaudhry. (Dkt. #30 at 20.)  Defendant Win Win Real Estate acted as the broker and leasing agent for the Chaudhrys. (Dkt. #34 at 57.)  The lease agreement listed the rental amount as $1,450 per month. (Dkt. #30 at 20.)  Included in the lease agreement were additional charges of $42 per month for Homeowner's Association ("HOA") fees and $28 per month for property management fees. (*Id.* at 22, 32.)

At the time of the lease signing, the Chaudhrys also submitted a Request for Tenancy Approval to the Southern Nevada Regional Housing Authority (the "SNRHA") asking that the Property be considered for approval under the Section 8 Tenant-Based Housing Choice Voucher Program. (Dkt. #36 at 10.)  Under Section 8, HUD enters into annual contribution contracts with regional public housing agencies across the United States, including the SNRHA. (Dkt. #5 at 3.)  Pursuant to the contribution contract, the SNRHA makes monthly housing assistance payments to landlords on behalf of eligible tenants. (*Id.*)  The contract between the SNRHA and a landlord is known as a Housing Assistance Payments ("HAP") Contract. (*Id.* at 4.)

The Request for Tenancy Approval submitted by the Chaudhrys included a section listing the utilities and appliances for the Property and whether they would be provided or paid for by the tenant or the owner. (Dkt. #36 at 10.)  It also states that "[u]nless otherwise specified below, the owner shall pay for all utilities and appliances provided by the owner." (*Id.*)  The HOA and property management fees were not listed on the Request for Tenancy Approval submitted by the Chaudhrys.  In their opposition the Chaudhrys allege, and Ms. Holmes does not dispute, that the Chaudhrys provided a copy of the lease agreement to the SNRHA with their Request for Tenancy Approval.

The SNRHA reviewed the Request for Tenancy Approval and determined that the rental amount of $1,450 listed in the lease exceeded 40% of Ms. Holmes' adjusted income and therefore had to be reduced to comply with Section 8. (Dkt. #36 at 18.)  On January 11, 2012, the

Chaudhrys entered into a Reduction in Rent Acknowledgment with the SNRHA, reducing the

rent to $1,328. (Dkt. #30 at 47.)  In that Acknowledgment, the Chaudhrys agree:

> . . . that no additional rent is to be collected from the above named client
> (Side Payment).  I/we understand if it is discovered that additional rent is
> being collected from the tenant, the Housing Assistance Contract (HAP) will
> be terminated.

(*Id.*)

That same day, the Chaudhrys also entered into a HAP Contract (the "HAP Contract")

with the SNRHA. (*Id.* at 34-45.)  The HAP Contract contained the terms of the SNRHA's

payment assistance to the Chaudhrys on behalf of Ms. Holmes.  Part A of the HAP Contract lists

the "rent to owner" as $1,328, of which $1,103 would be paid by the SNRHA every month as a

housing assistance payment pursuant to Section 8. (*Id.* at 35.)  Part A, section 8 of the HAP

Contract, which is nearly identical to question 11 in the Request for Tenancy Approval, also lists

the utilities and appliances for the Property and whether they are to be provided or paid for by the

tenant or the owner. (*Id.* at 36.)  Section 8 of the HAP Contract states that "[u]nless otherwise

specified below, the owner shall pay for all utilities and appliances provided by the owner." (*Id.*)

Part A of the HAP Contract does not include a reference to additional HOA or property

management fees. (*Id.*)

Parts B and C of the HAP Contract provide, in relevant part, that: (1) the HAP Contract

specifies which utilities and appliances are to be provided or paid for by the tenant or the owner;

(2) the lease shall be consistent with the HAP contract; (3) the rent payment may at no time

exceed the reasonable rent as determined by the SNRHA; (4) the rent payment includes all

housing services, maintenance, utilities and appliances with the lease; (5) except for the rent

payment, the owner has not received and will not receive any payments or other consideration for

rental of the unit during the HAP contract term; and (6) unless the owner has complied with all

provisions of the HAP contract, the owner does not have a right to receive housing assistance

payments under the HAP contract. (*Id.* at 38-39; 42-45.)

From December 2011 to March 2013, the Chaudhrys owned the Property and leased it to Ms. Holmes. (Dkt. #34 at 31.)  In January 2012, Ms. Holmes provided the Chaudhrys with a security deposit of $1,000. (Dkt. #31 at 3.)  In March 2013, the Chaudhrys transferred ownership of the Property to Chaudhry Trust 1. (Dkt. #34 at 31.)  Defendant Moonlit acted as trustee for Chaudhry Trust 1 and managed the Property. (*Id.*)  Ms. Holmes resided in the house from December 2011 to September 2013. (Dkt. #5 at 2; Dkt #24 at 1.)  From December 2011 to September 2013, the SNRHA made monthly housing assistance payments to the Chaudhrys and Moonlit on behalf of Ms. Holmes for rental of the Property. (Dkt. #5 at 6; Dkt. #24 at 1.)

From at least January 2012 to January 2013, Ms. Holmes was charged monthly for HOA and property management fees. (Dkt. #5 at 5; Dkt. #24 at 1; Dkt. #31 at 2.)[2]  Ms. Holmes states that she stopped paying the monthly HOA and management fees after she was told by an SNRHA employee that her landlord was not allowed to charge her additional fees outside the HAP Contract. (Dkt. #31 at 2.)  The affidavit of Mr. Chaudhry states that Ms. Holmes owes HOA and property management fees for the entire time that the Chaudhrys leased Ms. Holmes the Property (December 2011 through March 2013), while Moonlit's affidavit makes no mention of charging HOA and management fees. (Dkt. #34 at 31-32, 48-49.)

In September 2013, Ms. Holmes vacated the Property. (Dkt. #31 at 2.)  After moving out, Ms. Holmes never received her $1,000 security deposit back. (*Id.* at 3.)  She contends that in late November 2013, after several attempts to recover the $1,000, and after she sent a demand letter, Moonlit sent her an accounting of her security deposit. (*Id.*)  Defendants do not dispute that Ms. Holmes vacated the Property in September 2013, that she paid the $1,000 security deposit, or that the deposit was never returned. (Dkt. #34 at 5-6.)

**II. ANALYSIS**

Summary judgment is appropriate if the pleadings, depositions, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is

---

[2]  Ms. Holmes' complaint alleges that the defendants violated the FCA each month during the entire time she resided at the Property (December 2011 to September 2013). (Dkt. #5 at 8.)

1  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might

2  affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

3  U.S. 242, 248 (1986).  An issue is genuine if "the evidence is such that a reasonable jury could

4  return a verdict for the nonmoving party." *Id.*

5          The party seeking summary judgment bears the initial burden of informing the court of the

6  basis for its motion, and identifying those portions of the record that demonstrate the absence of a

7  genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden

8  then shifts to the nonmoving party to go beyond the pleadings and set forth specific facts

9  demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato*

10 *Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).  The nonmoving party cannot avoid summary

11 judgment by relying solely on unsupported, conclusory allegation. *See Taylor v. List*, 880 F.2d

12 1040, 1045 (9th Cir. 1989).  I view the evidence and reasonable inferences in the light most

13 favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915,

14 920 (9th Cir. 2008).  But if the evidence of the nonmoving party is merely colorable or is not

15 significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50.

16      **A.  The FCA Claim**

17          Under the FCA, a private individual is authorized to bring an action on behalf of the

18 United States against any entity that has knowingly presented a false or fraudulent claim to the

19 United States Government. *See, e.g.*, *United States ex rel. Anderson v. Northern Telecom*, 52 F.3d

20 810, 812–813 (9th Cir. 1995).  The FCA makes liable anyone who "knowingly presents, or causes

21 to be presented, a false or fraudulent claim for payment or approval" to the United States

22 Government. 31 U.S.C. § 3729(a)(1).

23          To establish liability under the FCA, a plaintiff must show: (1) a false statement or

24 fraudulent course of conduct; (2) made with scienter; (3) that was material, causing; (4) the

25 Government to pay out money or forfeit moneys due. *United States ex rel. Hendow v. Univ. of*

26 *Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

27

28

1          *(1) Defendants Faisal and Sarah Chaudhry*

2          Ms. Holmes argues that the Chaudhrys violated the FCA by charging her additional HOA

3    and property management fees which were outside the rent listed in the HAP Contract.  The

4    defendants argue that the SNRHA approved the lease agreement which contained the HOA and

5    property management fees and that the terms of the lease agreement became part of the HAP

6    Contract.  Therefore, in their view, they did not violate the FCA.

7          *a.   A false statement or fraudulent course of conduct*

8          A party can sufficiently establish this first element under a theory of express or implied

9    false certification. *United States ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 995 (9th Cir. 2010).

10   Express certification occurs when "the entity seeking payment certifies compliance with a law,

11   rule or regulation as part of the process through which the claim for payment is submitted." *Id.* at

12   998.

13         "The Housing Choice Voucher Program Guidebook published by HUD defines 'fraud'

14   and 'abuse' in the Section 8 Program as: a single act or pattern of actions made with the intent to

15   deceive or mislead, constituting a false statement, omission, or concealment of a substantive

16   fact." *Unites States ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Ore. 2007); *see

17   also United States ex rel. Mathis v. Mr. Property, Inc.*, 2:14-cv-00245-GMN-NJK, 2015 WL

18   1034332, *4 (D. Nev. Mar. 10, 2015) (quoting *Sutton*).  The Housing Choice Voucher Program

19   Guidebook also states that "[c]ollecting extra or 'side' payments in excess of the family share of

20   rent or requiring the family to perform extraordinary services in lieu of payments" qualifies as

21   fraud or abuse.[4]  Courts also have found that charging additional fees not included in a HAP

22   contract may be considered side payments and a fraudulent course of conduct under the FCA. *See

23   Coleman v. Hernandez*, 490 F. Supp. 2d 278, 280 (D. Conn. 2007) (charging additional fees for

24   water usage were side-payments when not included in the HAP contract, and therefore an FCA

25   violation); *Sutton*, 564 F. Supp. 2d at 1187 (charging additional fees for landscaping could be an

---

27   [4] HUD, Voucher Program Guidebook: Housing Choice 22-1 (April 2001), *available at*
     http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/hcv/forms/g
28   uidebook.

1   illegal side-payment in violation of the FCA); *Mathis*, 2015 WL 1034332 at *5 (charging

2   additional fees for pool maintenance could be considered a fraudulent course of conduct under the

3   FCA).

4          Here, the Chaudhrys certified in the HAP Contract that (1) except for the rent payment,

5   they did not receive and would not receive any other payments or contributions for rental of the

6   Property; and (2) the terms of the lease were in accordance with all provisions of the HAP

7   contract. (Dkt. #30 at 39, 42.)  The Chaudhrys also agreed in the Reduction in Rent

8   Acknowledgment that no additional rent was to be collected from Ms. Holmes and that doing so

9   would terminate the HAP Contract. (*Id*. at 47.)  The defendants contend that because the lease

10  agreement was attached to the Request for Tenancy Approval, it became part of the HAP

11  contract.  However, they cite no evidence or legal authority to support this argument.  Further, the

12  HAP Contract makes clear that when the terms of the lease agreement and the terms of the HAP

13  Contract conflict, the HAP Contract controls. (Dkt. #30 at 45.)

14         The defendants also contend that Ms. Holmes never actually paid any HOA or property

15  management fees during her tenancy.  However, under the FCA, liability attaches when someone

16  "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or

17  approval" to the United States Government. 31 U.S.C. §3729(a)(1)(A).  It is the defendants'

18  conduct and statements to the Government that are relevant in an FCA claim.  The question is not

19  whether Ms. Holmes ever paid the HOA or property management fees, but rather whether the

20  Chaudhrys charged her additional fees in violation of the HAP Contract which formed the basis

21  for the Government's decision to pay out moneys.  The defendants do not dispute that from at

22  least January 2012 to January 2013, the Chaudhrys charged Ms. Holmes for additional HOA and

23  property management fees above the "rent to owner" amount listed in the HAP Contract. (Dkt. #5

24  at 5; Dkt. #24 at 1.)  Therefore, even when viewing the facts in the light most favorable to the

25  defendants, no genuine issue of fact remains that charging the HOA and property management

26  fees was a fraudulent course of conduct under the FCA.  Accordingly, Ms. Holmes has proven the

27  first element of an FCA claim as to defendants Faisal and Sarah Chaudhry.

28

1

                    *b.   Made with scienter*

2            Ms. Holmes argues that, given that the Chaudhrys entered into the HAP Contract and the

3    Reduction in Rent Acknowledgment, they knew or should have known that they were not allowed

4    to charge additional amounts in excess of the HAP Contract.  The FCA defines "knowing" and

5    "knowingly" as having actual knowledge of the information, acting in either deliberate ignorance,

6    or acting in reckless disregard for the information's truth or falsity. 31 U.S.C. § 3729(b)(1)(A).

7            When the Chaudhrys executed the HAP Contract, they agreed to comply with its

8    provisions.  Various sections of the HAP Contract make clear that additional payments above the

9    "rent to owner" are prohibited.  Similarly, the Reduction in Rent Acknowledgment signed by the

10    Chaudhrys states that no other payments would be collected from Ms. Holmes.  Although the

11    Chaudhrys submitted the lease agreement containing the additional HOA and property

12    management fees to the SNRHA with their Request for Tenancy Approval, these additional fees

13    were not specifically noted in either the Request for Tenancy Approval or the subsequent HAP

14    Contract as items the tenant would pay.  The HAP Contract states that when there are conflicts

15    between the terms of the lease agreement and the terms of the HAP Contract, the HAP Contract

16    controls.  Therefore, even when viewing the facts in the light most favorable to the defendants, no

17    genuine issue of fact exists that the Chaudhrys deliberately ignored or recklessly disregarded the

18    terms of the Reduction in Rent Acknowledgment and HAP Contract when they charged HOA and

19    property management fees to Ms. Holmes while simultaneously receiving housing assistance

20    payments.  Ms. Holmes has proven the second element of her FCA claim against the Chaudhrys.

21                  *c.   That was material*

22            Ms. Holmes argues that under the HAP Contract and federal regulations, the SNRHA

23    would have terminated the HAP Contract had it known of the additional side payments.  The

24    defendants do not specifically address this element, instead arguing that the SNRHA approved the

25    lease and therefore the lease became part of the HAP Contract.

26            The third element of an FCA claim requires that a false statement or course of conduct "be

27    material to the Government's decision to pay out moneys to the claimant." *See Hendow*, 461 F.3d

28

1    at 1172; *Ebeid*, 616 F.3d at 997.  This means that there must be a causal relationship between the

2    fraudulent conduct and the Government's loss. *Hendow*, 461 F.3d at 1172.

3        Part B, section 7(b) of the HAP Contract explicitly states that the owner does not have a

4    right to receive housing assistance payments under the HAP Contract unless the owner has

5    complied with all its provisions. (Dkt. #30 at 38.)  The HAP Contract and federal regulations also

6    prohibit the Chaudhrys from charging additional fees above the "rent to owner."  (*Id.* at 42); *see*

7    *also* 24 C.F.R. § 983.353(b)(2)-(3).

8        Further, the SNRHA denied the Chaudhrys' initial Request for Tenancy Approval to rent

9    the Property at $1,450 as too high, requiring the Chaudhrys to reduce the rent to meet Section 8

10   requirements.  It is clear that the amount of money the Chaudhrys intended to collect from Ms.

11   Holmes, including any additional fees being charged above the HAP Contract amount, would

12   have been material to the Government's decision to make payments. *See, e.g.*, *Sutton*, 564 F.

13   Supp. 2d at 1188-89 (charging additional fees above the agreed upon "rent to owner" was

14   material); *Mathis*, 2015 WL 1034332 at *6 (same).  Therefore, Ms. Holmes has proven the third

15   element of her FCA claim against the Chaudhrys.

16                    *d.   Causing the Government to pay out money*

17       Ms. Holmes states, and the defendants do not dispute, that the SNRHA paid out moneys

18   on behalf of Ms. Holmes to the Chaudhrys and Moonlit. (Dkt. #31 at 2.)  Under the fourth

19   element, the fraudulent conduct must have caused the Government to pay out moneys. *Hendow*,

20   461 F.3d at 1177.  The SNRHA receives annual contribution payments from HUD pursuant to

21   Section 8 and uses those funds to subsidize rent payments for qualified applicants.  Therefore, no

22   genuine issue of material fact exists that the Government paid out moneys pursuant to the HAP

23   Contract.

24       Because no genuine issue of material fact exists on any of the four elements of the FCA

25   claim against the Chaudhrys, I grant summary judgment to Ms. Holmes as to the Chaudhrys'

26   liability under the FCA.  Ms. Holmes does not ask for a specific damage amount in her summary

27   judgment motion.  Further, as explained above, it is unclear exactly how long the Chaudhrys

28

charged Ms. Holmes the improper fees.  This information is necessary to calculate damages and penalties under the FCA.  I therefore direct the parties to submit supplemental briefs regarding the appropriate damage and penalty awards for the Chaudhrys' violation of the FCA.

### (2) Defendant Moonlit

Ms. Holmes' affidavit alleges that she was charged HOA and property management fees from January 2012 to January 2013, which is prior to when Moonlit took over ownership of the Property.  She does not provide any evidence that Moonlit charged her the additional fees after it took over the Property in April 2013.  Therefore, Ms. Holmes has not met her initial burden under Federal Rule of Civil Procedure 56(a) of proving there is no genuine issue of material fact as to Moonlit's liability under the FCA.  I therefore deny Ms. Holmes' motion for summary judgment on the FCA claims as to defendant Moonlit.

With regard to defendants' motion for summary judgment on the FCA claims against Moonlit, the defendants offer no arguments as to why Moonlit is not liable under the FCA.  On element 1, Moonlit never denies charging Ms. Holmes HOA and property management fees.  Nor has it produced any evidence proving that it did not charge her.  Because no specific facts or arguments have been provided as to why Moonlit may be differently situated than any other defendant, Moonlit fails to show it is entitled to summary judgment.

Therefore, I deny the defendants' motion for summary judgment as to the FCA claims against Moonlit because the defendants have failed to meet their initial burden under Rule 56(a).

### (3) Defendant Win Win

As to defendant Win Win, Ms. Holmes contends that in addition to brokering the lease, Win Win also managed the Property for the Chaudhrys.  In her complaint Ms. Holmes alleges, and the defendants do not dispute, that Win Win's agent charged Ms. Holmes the monthly rent which included the HOA and property management fees. (Dkt. #5 at 5; Dkt. #24 at 1.)  Ms. Holmes also alleges, and the defendants do not dispute, that the agent for Win Win told her that the HOA and property management fees were required payments under the lease. (Dkt. #5 at 6;

1   Dkt. #24 at 1.)  In its affidavit, Win Win admits that it marketed and leased the Property to Ms.

2   Holmes but denies managing the property. (Dkt. #34 at 57.)

3         The FCA makes liable anyone who "knowingly presents, or causes to be presented, a false

4   or fraudulent claim for payment or approval" to the United States Government. 31 U.S.C. §

5   3729(a)(1)(A).  However, neither the plaintiff nor the defendants offers sufficient facts and

6   argument as to why Win Win specifically is or is not liable under the FCA.

7         Viewing both parties' summary judgment motions in the light most favorable to the

8   nonmoving party, neither party has met its initial burden of proving that no genuine issues of fact

9   exist as to Win Win's liability under the FCA.  As such, I deny both parties' motions on that

10  claim.

11        **B. The NRS § 118A.242 Claim**

12        Pursuant to NRS § 118A.242(4), upon the termination of a tenancy, a landlord may claim

13  any amount of the tenant's security deposit that is "necessary to remedy any default of the tenant

14  in the payment of rent, to repair damages to the premises caused by the tenant other than normal

15  wear and to pay the reasonable costs of cleaning the premises."  The landlord also must provide

16  the tenant with an "itemized written accounting" of the security deposit. NRS § 118A.242(4).  If a

17  landlord "fails or refuses to return the remainder of a security deposit within 30 days after the end

18  of a tenancy, the landlord is liable to the tenant for damages" equal to the entire security deposit.

19  NRS § 118A.242(6).  The landlord also may be liable for an additional sum up to the amount of

20  the entire deposit, to be decided by the court. *Id.*  When determining the appropriate amount of

21  this additional sum, I must consider: (1) whether the landlord acted in good faith, (2) the course of

22  conduct between the landlord and the tenant, and (3) the degree of harm to the tenant caused by

23  the landlord's conduct. NRS § 118A.242(7).

24        Moonlit does not dispute that Ms. Holmes paid the $1,000 security deposit or that it was

25  not returned.  Moonlit also does not dispute that Ms. Holmes vacated the Property in September

26  2013 and did not receive a written accounting of her deposit until November 2013, over 30 days

27

28

later.  Further, Moonlit does not dispute that under the statute it is liable if it did not either (1) return the security deposit or (2) give Ms. Holmes a written accounting within 30 days.

Ms. Holmes argues that she is entitled to damages up to twice the amount of the security deposit.  Because Moonlit does not dispute Ms. Holmes' interpretation of the statute, I assume without deciding that this is correct.  However, as with her FCA claim, Ms. Holmes' summary judgment motion does not move for a specific amount of damages on this claim.  Nor does it provide an explanation as to what the appropriate amount of damages would be under NRS § 118A.242(6) using the factors listed in NRS § 118A.242(7).

Therefore, I grant Ms. Holmes' summary judgment motion as to liability on her claim under NRS § 118A.242.  Pursuant to NRS § 118A.242(6)(a), Ms. Holmes is entitled to the return of her $1,000 security deposit.  As to any additional sum she may be entitled to under the statute, there are issues of fact that must be resolved before any such amount can be determined.  Ms. Holmes states that she diligently cleaned the Property before vacating and denies causing any damage.  Moonlit alleges that Ms. Holmes damaged the Property prior to leaving, and has brought counterclaims against her based on that allegation.  These issues, and any additional amount Ms. Holmes may be entitled to under NRS § 118A.242(6) will be resolved at trial.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff Lakeysha Holmes' motion for summary judgment **(Dkt. #30) is GRANTED in part and DENIED in part**.  As described above, defendants Faisal Chaudhry and Sarah Chaudhry are liable under the FCA.  Defendant Moonlit Properties LLC is liable under NRS § 118A.242.

IT IS FURTHER ORDERED that the defendants' motion for partial summary judgment **(Dkt. #32) is DENIED**.

/ / / /

/ / / /

/ / / /

/ / / /

1    IT IS FURTHER ORDERED that within 14 days of entry of this order, plaintiff shall file

2 a supplemental brief as to the appropriate damage and penalty awards for the Chaudhrys' FCA

3 violation.  The defendants shall file any response to plaintiff's brief within 14 days thereafter.

4 Plaintiff shall file any reply 10 days after the defendants' response.

5    DATED this 19th day of October, 2015.

6

7                                                    _____

8                                                    ANDREW P. GORDON
                                                     UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28